All right, our next case this morning is Taylor v. City of Lawrenceburg, case number 17-2803. May it please the court, fellow counsel, good morning. I'm Richard Butler. I'm one of the lawyers for Doug Taylor in this section 1983 First Amendment retaliation case. I come to you this morning all the way from the very southeast corner of the state of Indiana. That's where all the activity in this case took place. And in the simplest lay terms, we're here before you today because down in my neck of the woods, somebody didn't count so well. They never realized that two is not a majority of four. When was that problem with the voting first raised in the district court, Mr. Butler? Your Honor, that was raised at the summary judgment level. I see it raised at page 31 of your summary judgment brief with respect to your own motion for partial summary judgment. I don't see that point ever having been linked in the summary judgment briefing as the answer to the defendant's res judicata and collateral estoppel defenses. A couple of things, Your Honor. I do believe it is raised elsewhere in the brief. I've got it highlighted in my brief, which I don't have in front of me. Would you like to get it? Certainly, Your Honor. Thank you, Your Honor. Your Honor, it's mentioned in our brief and footnote four at page three. It's noted there that defendant didn't terminate Taylor until after the termination hearing. I believe it's noted again at page seven. Pardon, Your Honor. You're talking about your summary judgment brief, right? Yes. Plaintiff's brief in opposition, document 124. Yeah, I don't quite see the point of footnote four. What's the next point? Then at page seven, we mention it again, Your Honor. And the point was that we were pointing to some circumstantial evidence that showed retaliatory intent. And we were talking about procedural irregularities, and one of the procedural irregularities we point out there is that they didn't follow their own decision rule. I understand that, but I'm trying to understand why. You said in your brief you're not trying to be clever, but this is really an extraordinary theory that, as near as I can tell, was not timely raised in the district court to defeat race judicata. Judge, the first time that issue was raised was on pleading summary judgment. We responded to it there, and we argued it there, both in response to defendant's motion and on our partial motion. So where? Where do you say that the findings can't be given binding effect because there were only two votes? Judge, we may not end that brief at that point because defendant's race judicata argument at that point was not based upon the board's finding. Rather, before this board hearing ever took place, if you look at defendant's argument, I had to file a complaint in the circuit court to stop the board from having the meeting or the hearing in executive session and also challenging whether they could do it because there wasn't a disposition of his criminal case. What defendant asserts in their argument for race judicata is that it was in that action that we should have raised this issue, and we didn't in that action and were barred. It wasn't because of the board's decision. I thought they were talking about the post board. I thought they were basing the race judicata argument on the board's decision and then the appeal that you filed in the trial court that you dismissed. They do now after the court's order, but in their own motion for summary judgment, that is not the basis of their race judicata argument. The basis of the race judicata argument is an action that we filed very, very briefly to enjoin what the board did. So the first opportunity for us to raise that was when we raised it. Is your theory that, in essence, your client still works for the city of Lawrenceburg, that he was never fired? He does not. His job was terminated, despite the board never having made a decision to terminate him. Well, it did, and it did so in accordance with Indiana law, which permits the board to act and conduct its business on the basis of a quorum, and it had a quorum. So this whole argument is just a sideshow. Your Honor, I disagree respectfully. The board laid out, there's three facts that were before the district court, and I think counsel. What does Indiana law say on that subject? Indiana law authorizes the board to adopt whatever policies and procedures they're inclined to for handling these disciplinary matters. Well, Indiana law authorizes the board to conduct its business by a quorum, which is defined in Indiana Code Section 36833A as a majority of the members. The quorum? The board had a quorum. I don't disagree with that, Your Honor. And the board acted according to the quorum. I disagree with that, Your Honor. There's no basis in law for that disagreement. If I could explain, Your Honor. The law says that that board, acting as a quorum as it was, I agree with, Your Honor, can adopt whatever rules it wants for handling these disciplinary matters. It adopted such a rule here, and it's clear and ambiguous on its face. It said in order to make a decision in this case, it's going to be by a majority vote of all those members present throughout the hearing of the evidence. That's their rule. The second fact here that's undisputed and that was before the district court is that there were four such members present. And the third fact that makes clear the court's error, that was also before the court, is that only two of those four members present voted to adopt those proposed findings. Two is not a majority of four. Therefore, the board failed, although acting as a quorum properly, to make a decision because of its own rule. The mayor always abstains unless there's a tie. The five-member board with the mayor serving as one of the members, he only participates in voting on matters if there's a tie. So this was conducted in accordance with the board's standard operating procedures and customs. Judge, I don't think there's any evidence of standard operating procedures and customs. Certainly, it's pointed out that the mayor does say, I only vote in the event of a tie. And I know why that is. Under Indiana state law, the mayor presides over city council meetings, but he doesn't vote in those city council meetings because he's not a member of the council. But the law goes on to say, Mayor, if there's a tie, you can break it. And I think that's carried over in the mayor's mind. But really, the fact that he didn't vote or why he didn't vote doesn't matter because they've adopted this rule that says it's got to be a majority of all those present. The rule doesn't say a majority of all those present except the mayor. The rule doesn't say a majority of all those present except the mayor because he only votes in the event of a tie. The rule doesn't say a majority of just those who vote. They're stuck with their own rule. That's not a bad thing. How many votes would it take to change the rule? The majority of a quorum? I think that's an interesting question, one I'm not prepared to answer and don't have an answer to. I would think that a majority of the quorum probably would be okay in that instance. Then why not treat the final decision, which everybody recognizes was given effect, that Mr. Taylor did lose his job as a police officer as implicitly having done so? Judge, and I'm going to come back to the rule. That rule means something. That's what the board told Mr. Taylor was going to happen in this case. Here's how we're going to make the decision. I think it's important to distinguish between what individuals did after the board failed to adopt those proposed findings and what the board did. The board acts through its votes. To make a decision in Taylor, it needed at least three votes because there were four members present, and that's what the rule said. The board didn't act to terminate Taylor. Was he subsequently terminated? Sure, but his affidavit says he knew he was terminated because he was already suspended. He wasn't working. He was getting weekly paychecks. But the weekly paychecks stopped coming in, and he also got a paycheck for the benefits that he'd accumulated up to that date. Now, some individual had to stop sending him paychecks, had to also send him a paycheck. I don't know under what authority because the board never decided to terminate Taylor. Mr. Butler, aren't all these arguments with regard to the purported deficiency of the board's determination, weren't you obligated to raise all of those on appeal when you appealed the board's decision to the Indiana courts? And once you withdrew the appeal, then the board's determination became final and binding, and then aren't we bound to give effect to the findings and determinations of the board that the Indiana law determines to be final and conclusive? Your Honor, the right to appeal is pursuant to a board decision made pursuant to that disciplinary process. But, Mr. Butler, under your rationale, any time that a respondent or someone defending a board termination thinks that there's some reason why the board's determination isn't valid, whether it's because they don't have enough votes, perhaps it's the way the board conducted the hearings, perhaps it's because they're arbitrary and capricious in the way they decided or evaluated the facts, all of those arguments go to whether or not the board's decision is quote-unquote valid or invalid. And so shouldn't all of those issues alike be raised properly before the Indiana courts? If there's a decision, I agree with you. But the difference between, I think, this case and the case you're talking about is in this case there is no decision. There is a decision. You question its validity because of this issue about whether the board could act by a quorum or not, according to state law and the board's own rules. That's an issue to raise on appeal to the circuit court from the board's decision to try to invalidate it. But once you withdrew that, you can't come back and try to collaterally attack it through a federal civil rights action. And that's what you're essentially doing. Mr. Butler, could the board have decided Mr. Taylor's First Amendment claims? I don't think so because Mr. Taylor has to have suffered a deprivation in order to have a First Amendment claim. Well, he'd already been suspended at that point. The First Amendment claim that we have here is the deprivation claim. But for better or worse, he did raise the rationale for his termination before the board. And so we've got factual findings in the board's decision that basically, if they are binding, mean there's no First Amendment causation, notwithstanding what I understand to be an awful lot of smoke and circumstantial evidence of, I mean, politics is politics, whether we're talking Chicago or Lawrenceburg, right? But I guess what I'm, I'll tell you, in preparing for this argument, I was astonished at how little law there is on the interplay between tenured civil servants, like police officers, firefighters, teachers, and so on, and their constitutional litigation in Indiana. So I was wondering, suppose an officer loses one of these cases before the board but does not ask for, and the board does not make findings about causation like this. I would take it your position would be you could take that directly to federal court without going to the state courts. I would think that's correct, Your Honor. At least, but that suggests to me that what we're talking about here is more issue preclusion rather than claim preclusion. Your Honor, I see that I've got just a little under three minutes left. If there are no other questions, I'd like to reserve the balance of that time for rebuttal. Could I ask you to, just very quickly, you seem to be asking us to disagree with the county prosecutor about whether he would have had a Brady obligation to disclose to defendants Officer Taylor's admissions in the criminal case. I'm not so concerned with the Brady disclosure. I have no issue with that, but I think under the rules of evidence, an admission in a deferred prosecution agreement wherein there's no conviction to a crime of dishonesty is not admissible for impeachment. Under 609? Yes. Okay, it wouldn't be admissible as collateral evidence of impeachment, but wouldn't a defense lawyer has this disclosed to her and she has Officer Taylor, arresting officer on the stand, isn't she entitled to ask him, didn't you admit that you had lied to the city government in the following respects? Your Honor, I don't believe that she is under 609 and I think 607, if I'm not mistaken. She's not allowed to ask about a prior instance of lying? She may not be able to put on independent evidence of it, but if he lies, he's committing perjury in that case, right? That's a pretty messy prospect for future prosecutions if Officer Taylor stays on the force. My understanding of those rules, Your Honor, is that you can't bring that up absent a conviction. Really? Can you ask somebody about prior instances of dishonesty that did not lead to criminal convictions? Judge, I don't know the answer to that. Okay. Thank you very much. Thank you. Your Honors, may it please the court. My name is Jenna Throw and I represent the City of Lawrenceburg, City of Lawrenceburg Board of Works and Public Safety. Mayor Dennis Carr, Chief Gene Huenfeld Jr., and Board of Works members Mario Todd, William Bruner, and Donny Bryant. This court should affirm the district court's grant of summary judgment for three main reasons. First, because the board's findings were arrived at by a majority vote of two to one, and as such are given preclusive effect in federal court on plaintiff's First Amendment claims. So what do we make of the board's rule about a majority of those present throughout evidence and arguments adopted in this case, which the plaintiff tells us distinguishes this from the Capiletti case? Your Honor, under Indiana law, the Capiletti case does define a majority vote out of four members as a two to one vote. In that case... I understand that, but that's not the rule the board, this board, adopted in this case. Right. The board adopted a rule that a majority vote of the members present in hearing evidence would terminate the plaintiff's employment. And they voted by two to one with the mayor abstaining because, as Your Honor's noted, he only votes the event of a tie. Capiletti considered the same circumstances. They, too, considered what would be a majority vote of a four-member board. And in that case, the same issue was before the Court of Appeals in Indiana, whether the vote was void ad obitio. And in that case, the Court of Appeals in Indiana determined under Indiana law that a two to one vote is sufficient... Capiletti would be very compelling here, but for that resolution here. And even if... Respectfully, I do believe that the board did vote by a majority vote. And even if the plaintiff was correct that a two to one vote was insufficient, he was still obligated to appeal that to the local court. And he entirely failed to raise whether the vote was sufficient until, as he admitted just now in court, until his response to summary judgment. His response to my questions about that point, Ms. Throw, though, was that you all had made a very different argument originally. I confess I had focused on the plaintiff's summary judgment papers. I didn't go over yours as carefully. So what was your race judicata argument originally based upon? It's based on two theories, Your Honor. Which proceeding? And it's based on both the fact that the findings of the board are entitled to preclusive effect, as well as the fact that under race judicata law, the plaintiff was also required to raise his Section 1983 claim in the state court appeal of the Board of Works findings. The plaintiff incorrectly noted that... Do you think a plaintiff in Taylor's position can't go to federal court? No, Your Honor. A police officer who had gone through a term of disciplinary hearings, such as Mr. Taylor, is the board makes a decision. And under Indiana law, he is required to appeal that decision to the local trial court. And if that is not done or voluntarily dismissed, as in the case here, the findings of the board are final and binding. And that is what occurred here. The plaintiff lost his job. And even if he felt that the board did not sufficiently vote for him to lose his job, he still suffered those employment consequences. Let me ask you, is this claim preclusion or issue preclusion? Because I don't see how the First Amendment claim is even ripe until the board decides. That would be correct, Your Honor. The First Amendment claim became ripe when the plaintiff believed that he was terminated because of his alleged speech. You don't have to go... In 1983, you don't have to exhaust state remedies. That is correct. However, under race judicata law that this court has previously handled in particularly the Atkins versus Hamilton County, the terminated officer in his appeal in state court of the disciplinary decision is entitled to bring his Section 1983 claim at that time. He can. But doesn't he also have the option of going straight to federal court? Your Honor, he does not. With only federal claims. He does not. On what basis do you make that? On that basis is the doctrine of race judicata where he, in his appeal... He just told me his claim wouldn't even have been ripe until the board acts and that there's no obligation to go to state court to exhaust state remedies before asserting a federal constitutional claim. Now, I know that's not this case, but I'm trying to avoid us making bad law and confusing law for a lot of public servants and their employers in Indiana. I believe I see what you're saying. Had the plaintiff not appealed his termination proceedings, he may be able to go directly to federal court with that claim. However, the fact that he did initially file an appeal, all of his claims should have been filed at that time. It's kind of a dual answer. Had he not filed the appeal, which is basically the effect that his voluntary dismissal gives the board's findings, the board's findings are preclusive on a claim preclusion level under University of Tennessee v. Elliott. Because the plaintiff did file a state court appeal, he is then required to bring all of his claims at that time. He raises in his state court appeal following the proceedings that the board's decision was contrary to the Constitution. As part of those allegations, his First Amendment claim under Section 1983 involves the same evidence as his assertion that the board's decision was contrary to the Constitution. And as a result, he needed to bring both in front of the state court. He could not have split his claims as he did here and go to federal court. Because this court can affirm the district court's grant of summary judgment for any reason, turning then to the substantive First Amendment arguments, this court should further affirm the district court's grant of summary judgment because plaintiff is unable to establish a claim for First Amendment retaliation for any of his alleged speech. To begin with, his assertion that he was terminated because of his disagreements with the mayor on matters on city council. After a review of this court's law and the district court's blow, it appears that it is not clearly established in this circuit whether or not the speech of an elected official falls under Garcetti or perhaps falls under Elrod and Branty. Counsel, I got to say, I was mystified by your argument on this score. Because the case law that you're relying upon involves public officials who lose powers as elected officials. They're in the political milieu. But plaintiff's theory here is that because of his political activity on the city council, he lost a for-cause tenured position on the police force. I've never seen any employer contend that it could remove a tenured police officer based on his actions as an elected official. And that matter remains unresolved in this circuit. The other cases that have considered, because plaintiff wore two hats, both as an elected official and as a city police officer, the issue of whether an elected official's activities as a member of the city council, the question is whether that speech that he alleges is protected at all. And that question, aside from the particular... It's not just a question of whether it's protected. It's a question of whether his tenured civil service position as a police officer is vulnerable to the ebbs and flows of politics. And the whole purpose of that system under Indiana and many other states' laws is to protect police officers, teachers, firefighters, and so on, from those kind of political currents. He's protected as a police officer. He's not protected as a city council member. Correct. However, even higher-level police officers can sometimes be terminated under the Elrod Branty line of cases if their position rises to the level that they may be considered a policymaker. And that is the rationale that the first and second circuits have adopted in determining whether an elected official's speech... But those folks don't lose their tenured position under Indiana law on police forces, right? That is correct. You get promoted from lieutenant to chief. New mayor comes in, you're back to lieutenant. You're not off the force, right? That is correct. And we maintain that that remains an unresolved issue in this circuit, and that at least on the basis of whether or not that particular theory of speech is even protected would be entitled to qualified immunity. With respect to the letter that he disseminated on March 14, 2013, this letter, too, is not protected speech. The duties of a law enforcement official remain at all times to investigate and report on crime. At that point, he'd been suspended for a year and a half, right? He had no authority to act as a police officer. So how do you contend he was acting as a police officer? He had been on administrative leave immediately following his being charged with criminal acts. And after the new administration came in, he was assigned to a series of civil service-type positions. However, even though he was working in other positions, he remained a police officer until he was terminated on September 27. That sounds like an extraordinary heads-we-win, tails-you-lose kind of argument to me, frankly. Well, in this circuit, this court has previously decided that another police officer who was working as a media liaison, she had reported on criminal acts, and this court still held that she was She was in the police department, right? Correct. She was a police officer. What job was Mr. Taylor working as of March 2000, whatever year we're talking about here? I believe by that particular point, once he had entered into the deferred prosecution agreement, he had been relieved of his duties. He was working for the street department, right? Correct. As a laborer. Correct. And so how does his letter accusing multiple public officials of various forms of corruption fall within his duties? For all, even though he was working in other positions, his status remained similar to the plaintiff in the case where she was working as a media liaison, even though his training is as a police officer. So forever he's... While he's an employee. And he remained an employee until September 27, 2013. Along the Pickering issues here, you argue in the Pickering balancing test here, that plaintiff's position as a police officer was one in which personal loyalty and confidence are necessary. This is page 37 of your brief. A police department must have confidence that its officers are loyal to the city and to the interests of the department, and therefore this letter was so disruptive. How do you reconcile this assertion about personal loyalty and confidence with the state's civil service protection of police officers from... That's the kind of argument that's made with respect to high-level policymakers, to fire them for political affiliation. The police department remains a department of the city where discipline and loyalty among the department remain very important, and police departments... So criticism is disloyalty, is disruptive, is not protected. Not in all cases, but in this particular case, the Pickering balancing factors definitely weigh in favor of the city because of the disruptive nature of the speech. In several other cases... He's not in the office anymore, right? That is correct. So how does his criticism disrupt working relationships, his working relationships? That's the theory under Pickering. Correct. He's not working with them anymore. Correct. In other cases decided by the circuit, the circuit's previously determined that when employees go so abruptly outside of the chain of command that their speech tends to be more disruptive and the Pickering balancing factors tend to favor the city. When they're not employees? He remained an employee at the time that he wrote his letter. Can I ask you just very quickly, the plaintiff argues that the board purported here not only to remove him from the police force but also to bar Taylor's employment with other city departments. Is that right? That is correct. On what basis? The basis that was asserted was that the Board of Works also governed the other civil positions that he had occupied, and there was a genuine belief that there was the authority to terminate his position from all such departments. Everything for the city or everything under the board's jurisdiction? The belief was that they had the capacity to terminate him from any such positions that he held. And, Your Honors, I see that my time has expired. If there's any further questions, I would be happy to answer them. Thank you. Thank you. Mr. Butler, anything further? Very briefly, if I have a few seconds left, Your Honor. Thank you. I guess I'd just point out to the court that whether the board made a decision in the Taylor case is exclusively a function of the board's vote, not anything that transpired subsequent to that vote. That's all I have, Your Honor. Thank you. Our thanks to both counsel. The case is taken under advisement.